IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

**SHAWN RICHARD MONRO,**

                Petitioner,                              Case No. 2:18-cv-01458-JE

v.

                                                        OPINION AND ORDER

**BRAD CAIN,**

                Respondent.

**MOSMAN, J.,**

       On November 15, 2021, Magistrate Judge John Jelderks issued his Findings and Recommendation ("F. & R.") [ECF 76]. Judge Jelderks recommends that I deny the Amended Petition for Writ of Habeas Corpus [ECF 59] and dismiss this case with prejudice. Additionally, he recommends that I issue a Certificate of Appealability pursuant to 28 U.S.C. § 2253(c)(2) limited to Grounds I, II, IV(A) & (B) of the Amended Petition.

       Petitioner timely filed objections on February 1, 2022. Respondent filed a response on February 15, 2022. Petitioner sought leave, which I granted, to file a reply to the response; Petitioner filed his reply on March 7, 2022. Upon review, I agree with Judge Jelderks on all grounds except for his finding that Petitioner had not procedurally defaulted his Ground I claim. Accordingly, I deny the Amended Petition for Writ of Habeas Corpus and issue a Certificate of Appealability limited to Grounds II, IV(A) & (B).

## STANDARD OF REVIEW

       The magistrate judge makes only recommendations to the court, to which any party may file written objections. The court is not bound by the recommendations of the magistrate judge

1 – OPINION AND ORDER

but retains responsibility for making the final determination. The court is generally required to make a de novo determination regarding those portions of the report or specified findings or recommendation as to which an objection is made. 28 U.S.C. § 636(b)(1)(C). However, the court is not required to review, de novo or under any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the F. & R. to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). While the level of scrutiny under which I am required to review the F. & R. depends on whether or not objections have been filed, in either case, I am free to accept, reject, or modify any part of the F. & R. 28 U.S.C. § 636(b)(1)(C).

## BACKGROUND

Petitioner Shawn Richard Monro brings this habeas corpus petition challenging the legality of his conviction in Lane County from January 26, 2010. Petitioner was found guilty of nineteen different crimes stemming from a home invasion robbery in which Petitioner slit the homeowner's throat. The trial court sentenced Petitioner to 700 months in prison.

Prior to the start of voir dire, Petitioner's attorney objected to Petitioner's hand and leg restraints. Regarding the leg restraints, Petitioner's attorney stated:

> [J]ust for the record, the jury pool is going to be sitting behind us, and as they come up to take their chairs in the jury box, they're going to have to basically walk pretty near where Mr. Monro is sitting. And given how the angle of counsel table is, they'll be able to see that he is in restraints.

Trial Tr. [ECF 24–1] at 4.

In response, the trial judge stated, "my view has always been whatever the deputies want is what I want. So that's where that stands." *Id.* at 5. He also stated that Petitioner would have to keep his legs as far forward as possible and "jangle" them as little as possible. *Id.* Petitioner's trial attorney did not object to the adequacy of the trial judge's findings on the use of restraints—

2 – OPINION AND ORDER

only to the restraints themselves. *Id.* at 4 ("And we'd be objecting if he's going to be in restraints during this process and throughout trial as well.")

Four days into Petitioner's trial, the prosecutor asked to clarify the record on the shackles because "believe it or not, that comes up." Trial Tr. [ECF 24–2] at 107. The parties agreed that from the vantage of the jury box the leg shackles could not be seen because the table was draped and only open to the back. *Id.* at 108. The parties did not agree as to whether the jurors saw the shackles during voir dire:

> Prosecutor: It's difficult, if not impossible, to see his feet from where the jurors were sitting in jury selection.
>
> Court: Well, it wouldn't necessarily be impossible, but certainly difficult.
>
> …
>
> Defense Counsel: But I guess I would disagree with that assessment, and would just remind the Court that our objections when we were going through voir dire were that we had quite a few people that were sitting behind counsel table. And there are, I guess, three rows, three pews. And when the jury has to, you know, from the Court's perspective, walk from right to left, they can too see into the back of and underneath counsel table. So I would dispute that it's difficult to see, and certainly dispute that it's impossible. It's very—it's very easy to see down under counsel table with someone standing up and looking down under those tables.

Trial Tr. [ECF 24–2] at 108–9.

The trial judge went on to make the following statements and Petitioner's trial counsel again did not object to the adequacy of the trial judge's findings:

> Well, you can see that this is not going to be a circumstance that's going to work very well in terms of establishing where we are, since the two of you disagree. But in the absence of testimony by a sworn witness about the extent to which those leg shackles would be visible, I'm going to leave it that from where I'm seated, which of course is on the other side of this curtain . . . it's not obvious to me that jurors, potential jurors coming in here, would think that it's important as they're getting up from their seat to go take a seat in the jury box, to stare down at a defendant's feet to determine whether or not he might be in shackles. That doesn't strike me as particularly likely. Possible, but not likely.

3 – OPINION AND ORDER

> In addition to that, we have the fact that Mr. Monro, as he sits there, would have his feet in front of him. That his body and the body of the chair would in large part shield his feet from somebody going by. And to whatever extent he has long pants on, which he does, they would tend to cover his ankles and make those shackles less visible.
>
> So from my perspective, given the record as it is, I would say that it's certainly not impossible, but improbable both because of the physical circumstances and the fact that any juror getting up to come to the jury box would be focusing his or her attention on getting up, getting to the right place, and handing over questionnaires to the bailiff. Would make any study of a defendant's feet, when you wouldn't have any reason otherwise to be looking at them, improbable. So I'm going to leave it at that.

Trial Transcript [ECF 24–2] at 109–10. This exchange is the basis for Ground I of Petitioner's current habeas petition.

After sentencing, Petitioner directly appealed on four grounds, including Ground I of his current habeas petition. The Oregon Court of Appeals issued a written decision on one ground resolving the claim in Petitioner's favor (that the trial court failed to apply Oregon's "shift-to-I" rule resulting in an erroneous sentence) but rejected the other arguments (including the current Ground I argument) without discussion. F. & R. at 6. The Oregon Supreme Court denied review on the grounds rejected by the Oregon Court of Appeals. *Id.* at 6–7. Petitioner then filed for post-conviction relief in Malheur County, again raising the arguments he makes in Ground I of his habeas petition. *Id.* at 7. The PCR court denied relief. *Id.* The Oregon Court of Appeals affirmed that decision without a written opinion, and the Oregon Supreme Court again denied review. *Id.*

## DISCUSSION

In Ground I of the Amended Petition for Writ of Habeas Corpus, Petitioner argues that the failure of the trial judge to make adequate findings to support the decision to use restraints during trial violated his due process rights. Am. Pet. [ECF 59] at 2–3.

In the F. & R., Judge Jelderks found that Petitioner did not procedurally default on Ground I because this case is distinguishable from another, nearly factually identical case,

decided by the Oregon Court of Appeals and then vacated by the Oregon Supreme Court—*State v. Dream*, 202 Or. App. 245, 212 P.3d 699 (2005), *modified on remand*, 227 Or. App. 267, 205 P.3d 83 (2009). F. & R. at 8–12. After finding no procedural default, Judge Jelderks went on to consider the merits of Petitioner's argument. He concluded that, because it was more likely than not that no juror saw Petitioner's restraints, there was no due process violation. *Id.* at 15–16. The parties submitted briefing to the Court regarding the merits of Petitioner's Ground I claim. Objs. [ECF 84]; Resp. to Objs. [ECF 85]; Reply [ECF 89].

Upon review, I do not adopt Judge Jelderks's F. & R. on the procedural default of Ground I under 28 U.S.C. § 636(b)(1)(C). Instead, I find that Petitioner procedurally defaulted on his Ground I claim when his trial attorney only objected to the restraints and failed to object to the adequacy of the trial judge's findings justifying the use of the retrains. Petitioner therefore failed to present the claim to the Oregon state courts.

I.  **Procedural Default**

As an initial matter, "'a procedural default does not bar consideration of a federal claim … unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a procedural bar.'" *Smith v. Or. Bd. of Parole & Post-Prison Supervision*, 736 F.3d 857, 858–59 (9th Cir. 2013) (quoting *Harris v. Reed*, 489 U.S. 255, 263 (1989)). "Unless a court expressly (not implicitly) states that it is relying upon a procedural bar, we must construe an ambiguous state court response as acting on the merits of a claim, if such a construction is plausible." *Chambers v. McDaniel*, 549 F.3d 1191, 1197 (9th Cir. 2008).

In Oregon, "[e]ach assignment of error must demonstrate that the question or issue presented by the assignment of error timely and properly was raised and preserved in the lower court." Or. R. App. Pro. 5.45(4)(a). "Under Oregon's plain error doctrine, however, an appellate

5 – OPINION AND ORDER

court may address a defaulted argument if the trial court committed error apparent on the face of the record." *Smith*, 736 F.3d at 860 (citing *State v. Ramirez*, 343 Or. 505, 173 P.3d 817, 821 (2007)). "Even if the appellate court finds plain error, it must decide whether to exercise its discretion to consider that error. If the appellate court reaches the issue, it must 'articulate its reasons for doing so.'" *Id.* (quoting *State v. Fults*, 343 Or. 515, 173 P.3d 822, 826 (2007) (en banc)).

In *Smith*, the petitioner argued in his federal habeas petition that the admission of certain out-of-court statements at trial violated the Confrontation Clause of the Sixth Amendment under *Crawford v. Washington*, 541 U.S. 36 (2004)—a case decided after petitioner's trial. 736 F.3d at 859. The district court "found the Confrontation Clause claim procedurally defaulted because petitioner's hearsay objection at trial did not preserve the claim." *Id.* Further, the district court found that the cursory rejection of petitioner's appeal by the Oregon Court of Appeals did not preserve the issue because "the state court did not make a written finding of plain error." *Id.* The Ninth Circuit disagreed with the district court and found, because the Oregon Court of Appeals had rejected the claim without discussion or citation, "'that absence of a citation coupled with the cursory statement denying the petition satisfie[d] the exhaustion requirement.'" *Id.* at 861 (quoting *Chambers*, 549 F.3d at 1197–98).

At first blush, this line of caselaw appears to present a clear answer to the question of procedural default. However, the holding in *Smith* does not dictate the outcome in this case. The issue here is whether the claim was fairly presented to the Oregon state courts, not whether the state court's rejection of the claim rested on state procedural grounds.

There are two cases from the District of Oregon, both analyzing *Smith* and *Chambers*, that are instructive: *Glasscock v. Taylor*, 2:14-cv-016-SI, 2017 WL 1735173 (D. Or. Apr. 25,

6 – OPINION AND ORDER

2017) and *Kyte v. Persson*, 3:18-cv-00649-SB, 2020 WL 6371141 (D. Or. July 27, 2020). In both cases, the district court declined to apply the rule articulated in *Smith* because the issue was instead "whether Petitioner fairly presented [the] claim, not whether the Oregon Court of Appeals rejected the claim on state procedural grounds." *Kyte*, 2020 WL 6371141, at *5 (citing *Glasscock*, 2017 WL 1735173, at *7).

In *Glasscock*, the court found *Smith* distinguishable because the question was one of fair presentation and not a case decided on independent and adequate state grounds:

> Because Petitioner failed to preserve in the trial court his constitutional claim of the denial of the right to present a defense, he presented this claim in a procedural context in which the merits could not be considered. As such, he failed fairly to present this claim to Oregon state courts. Because the time for preserving and presenting his claim is passed, it is procedurally defaulted and there is no evidence of cause to excuse the default.

*Glasscock*, 2017 WL 1735173, at *6. The opinion went on to emphasize "that this is an issue of fair presentation, not an analysis of whether the Oregon Court of Appeals invoked an independent and adequate state procedural rule." *Id.* at *7. It is only when a claim has been fairly presented and the state court issues a decision that is ambiguous on whether it reached the merits is the district court "to presume that the state court adjudicated the claim on its merits." *Id.* Therefore, in *Glasscock*, there was no reason to assume that the Court of Appeals considered any unpreserved error.

As a result, the *Glasscock* court distinguished *Smith* because in *Smith* the petitioner had raised a Confrontation Clause issue on appeal as plain error in addition to a preserved state law hearsay claim. But "unlike in *Smith*," the petitioner in *Glasscock* "did not attempt to prove his right to present a defense claim as 'plain error' and the Oregon Court of Appeals did not issue a written opinion in which it disposed of both preserved and unpreserved claims arising from identical facts in an indistinguishable fashion." *Id.* at *7.

7 – OPINION AND ORDER

In *Kyte*, the court adopted the reasoning from *Glasscock* to find that Petitioner's reliance on *Smith* was misplaced because it relied "on whether the Oregon Court of Appeals had rejected a claim based upon an independent and adequate state procedural rule, and the Ninth Circuit applied a presumption that the Court of Appeals adjudicated the claim on the merits." 2020 WL 6371141, at *5. The court likewise found the issue was "whether Petitioner fairly presented his claim, not whether the Oregon Court of Appeals rejected the claim on state procedural grounds, and the same presumption does not apply." *Id*. The court reasoned that:

> Unlike in *Smith*, here there is no reason to believe that the Oregon Court of Appeals conducted a plain error review of Petitioner's federal speedy trial claim, without comment, where Petitioner did not explicitly request plain error review and where Oregon rules allow plain error review only under exceptional circumstances and require that the Court of Appeals articulate its reasons for considering plain error.

*Id*.

**II.     Analysis**

I find Petitioner's case analogous to *Glasscock* and *Kyte* and distinguishable from *Smith*. As Petitioner confirms, this case did not "resort to plain error review." Reply [ECF 75] at 9. Here, Petitioner failed to preserve at trial his constitutional claim of a due process violation when his trial attorney failed to object to the adequacy of the trial judge's findings on the use of restraints as required by Or. R. App. Pro. 5.45(4)(a). Petitioner's trial attorney only objected to the use of restraints. Applying *Glasscock's* reasoning, petitioner's trial attorney therefore failed to fairly preserve the claim and it could not then be properly presented to the Oregon state courts on review.

Because the record demonstrates that the claim was not fairly presented it cannot be said that the Oregon Court of Appeals or Oregon Supreme Court were ambiguous in their denials of the claim and that they perhaps rested on the merits. Here, there was no written opinion in this

case denying preserved and unpreserved claims arising from identical facts in an indistinguishable fashion like in *Smith*. Additionally, in *Smith* there was no question as to procedural default—the hearsay objection at issue was made at trial and the Confrontation Clause claim could only arise under plain error review as *Crawford* (the basis for the Confrontation Clause claim) post-dated petitioner's trial.

Additionally, like in *Kyte* there is no reason to assume that the Oregon Court of Appeals conducted a plain error review of Petitioner's claim, without comment, where Petitioner did not explicitly request plain error review, and where plain error review is only allowed in exceptional circumstances requiring the Oregon Court of Appeals to articulate its reasons regarding plain error. 2020 WL 6371141, at *5.

## CONCLUSION

Upon review, I agree with Judge Jelderks's recommendation in part, and I ADOPT the F. & R. [ECF 76] as my own opinion on all grounds, with the exception of its discussion of Ground I. Instead, I find Petitioner procedurally defaulted his Ground I claim. I DENY the Amended Petition for Writ of Habeas Corpus [ECF 59] and dismiss this case with prejudice. Additionally, I issue a Certificate of Appealability limited to Grounds II, IV(A) & B pursuant to 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 6 day of May, 2022.

MICHAEL W. MOSMAN
Senior United States District Judge